**CITY OF GALVESTON, a Municipal Corporation, Appellant,**

v.

**Loy JORDAN et al., Appellees.**

No. 14292.

Court of Civil Appeals of Texas.

Houston.

April 2, 1964.

Ervin A. Apffel, Jr., City Atty., Galveston, for appellant.

Holman Lilienstern, Texas City; Neugent & Lilienstern, Texas City, of counsel, for appellees.

WERLEIN, Justice.

This suit was brought by the City of Galveston against Loy Jordan, Clyde E. Smith and F. B. Thompson, partners, doing business under the name of Mainland Construction Company, to recover damages allegedly sustained by the City as a result of said defendants negligently damaging the City's influent water main at the intersection of 7th Street North and Main Street in the Town of Alta Loma in Galveston County, Texas. From a take-nothing judgment rendered against it by the trial court without a jury, the City has perfected its appeal. The parties will be referred to as plaintiff and defendants as in the court below.

At the request of plaintiff, the trial court made its findings of fact and conclusions of law. Appellant does not object to findings Nos. 1, 2, 4 and 6, which are substantially as here set out: The City maintains a 30 inch concrete influent water pipe line or main which was constructed in 1942 or 1943. The part of the main involved in this suit was laid in 7th Street North and runs in an easterly direction until it reaches Main

Street where it makes a 90° right angle turn and continues south with Main Street. At such right angle turn the main was covered by one to two feet of soil. At the time the main was built a poured concrete thrust block was constructed adjacent to and just east of the water main at the point of the right angle turn to strengthen the water main against the thrust and pressure of water coursing through it. Plaintiff's water main was constructed of pre-cast concrete pipe with mortared joints, which are inherently weaker and inferior to pipe now available.

On or about February 10, 1960, the defendants, pursuant to a contract with Galveston Water Control & Improvement District No. 8, were laying a 10 inch sewer line in a westerly direction within the street right-of-way of 7th Street North, at its intersection with Main Street. The defendants' activities included the digging of a ditch approximately 13 feet deep, with a ditching machine, and installing the sewer pipe and backfilling. After reaching the intersection, the sewer line is located north of and parallel with the water main, both proceeding westerly within the right-of-way of 7th Street North. The distance from the center line of the water main to the center line of the sewer line, after they become parallel, is 8.5 feet. During the construction of the sewer line ditch, the south edge of the open ditch was 5.5 feet north of the north edge of the water main. Prior to digging the sewer line ditch into said street intersection, engineers of Galveston County Water Control & Improvement District No. 8 located the water main by probing, and the course of the sewer line was relocated farther north so that the sewer ditch, when constructed, was at a greater distance from the water main than was originally planned. The purpose of this was to avoid hitting the water main with the ditching machine. The sewer line was constructed by defendants in accordance with the plans and specifications and located by them in compliance with such changes as made by the engineers. Mr. Lind Nelson, who was the Director of Public Works of the City of Galveston, knew in advance of the construction by defendants of the sewer system of Galveston County Water Control & Improvement District No. 8 in the vicinity of said 30 inch water main in said intersection.

Appellant asserts that the following findings of fact by the court are contrary to the overwhelming weight and preponderance of the evidence:

"3. Before any of the construction activities of Defendants reached the vicinity of the intersection of 7th Street North and Main Street, the water main was leaking in one or more places within the intersection.

\* \* \* \* \* \*

"5. The ditching machine did not strike or disturb the thrust block as it proceeded into and through said Street intersection, the course and location of the ditch being far enough North of the water main to prevent this.

\* \* \* \* \* \*

"7. The City of Galveston maintains pumping and other facilities on the mainland of Galveston County used in procuring and transporting such water; and a crew of workmen are employed by it in the Alta Loma area to operate these facilities. One of these employees is James Ryan, a pumper, who had, as a part of his duties, the responsibility of notifying Mr. Lind Nelson of breaks or leaks in the water main in the Alta Loma area. Mr. Ryan was present when the water main in said intersection was located by probing and the course of the ditch relocated and staked out by the Water District's engineers. Mr. Ryan was informed by Defendants prior to the entry of the ditching machine into said street intersection that the water main was leaking in such intersection.

"8. Prior to digging into the intersection, no City employee or agent warned Defendants of possible dam-

age to its water main or thrust block because of the proximity of the proposed sewer line to it on 7th Street. After the relocation of the sewer route, and after Mr. Ryan was notified by Defendants of leaks in the water main within such street intersection, no City employee or agent advised Defendants that it might damage the water main if the planned sewer line construction was accomplished.

"9. As the ditching machine approached the street intersection, more and more water was encountered, which made the construction operation very difficult. In order to expose the source of this water, Defendants removed the overburden of asphaltic pavement, compacted shell and soil from sections of the water main within the street intersection at and near the right angle turn. This released pressure from the leaks or breaks in the water main and allowed the water to escape therefrom more freely. Defendants also drilled holes adjacent to the water main on the North side thereof and placed well points therein. Well points are devices which are used in the removal of excess water near construction sites. In all of the foregoing, Defendants did not break or otherwise damage said water main."

█ It would unduly lengthen this opinion and serve no useful purpose to summarize the testimony of the various witnesses for plaintiff and defendants. It will suffice to say that we have read the entire statement of facts and carefully noted and analyzed the testimony of each witness, and have concluded that the court's findings of fact, conclusions of law and judgment are not so against the great weight and preponderance of the evidence as to be clearly wrong or unjust. In Re King's Estate, 1951, 150 Tex. 662, 244 S.W.2d 660.

In its Second Point, plaintiff asserts that the trial court erred in admitting the unsworn statement of its witness, Joe Macaluso, into evidence after the witness had denied giving the statement in the form it appeared in at the time of the trial, such statement having been admitted for impeachment purposes. Mr. Macaluso, who lived near the intersection of 7th Street North and Main Street, when asked on direct examination whether there had been any leaks in the intersection, testified that prior to any of the digging in the street there was a little water on the street whenever he would pass there. On cross-examination he testified that there was a damp spot which stayed all the time "past the intersection, maybe 20 feet past the intersection," but not right in the intersection. He admitted that he gave a statement to a man who called upon him, which reads as follows:

"I, the undersigned, state that prior to the time Mainland Construction Company of Texas City started work on sewer line at Main Street and 7th, water was standing in the street at all times, a little amount of water."

Counsel for defendants later offered the statement which was admitted over plaintiff's objection. No objection was made by plaintiff however, when the witness was asked whether he had given such statement. He explained that he did not say in the statement that the leak was in the intersection and that the phrase "Main and 7th" merely identified the intersection, but that the water was 20 feet therefrom.

The case was tried before the court who could properly appraise the evidence and determine whether the statement did in fact contradict the witness's testimony or confirm the same. At most such evidence was cumulative since several other witnesses testified to leaks at or near the intersection prior to any of the digging in the street by defendants. Also, there had been other testimony that in case of a leak in a water main, the water would follow the line of least resistance and might show up some 20 feet or more distant from the site of the leak.

The court admitted the statement which was signed by the witness, for impeachment purposes, and commented, "If we were going to a jury I wouldn't do it, but I don't think it makes any difference." If there was any error in admitting the statement, it was not such as was calculated to cause and probably did cause the rendition of an improper judgment. Rule 434, Texas Rules of Civil Procedure.

Judgment affirmed.